All right. Well. There we are. All right, Mr. Eggly, can you can you hear us? I can, your honor. Okay, Mr. Ballard, you may proceed. May it please the court. My name is Grant Ballard. I represent the appellant Isiah Dozier, Jr. Mr. Dozier requests a reversal of his conviction in a new trial in the Eastern District of Arkansas. He was previously convicted of possession of contraband in prison, specifically possession of methamphetamine, possession of marijuana, and possession of a cellular telephone. Now, we present three primary arguments for review by this court. The first being our argument that the district court erred in denying Mr. Dozier the right to call a witness in his defense in violation of the Sixth Amendment of the United States Constitution. Our second primary argument is that the district court erred in its instruction to the jury as to the law applicable to the charges. And our third primary argument is the district court erred in admitting a pair of tennis shoes into evidence without a proper foundation. I think I'll briefly run through what I consider to be the most relevant facts. Long story short, Isiah Dozier, Jr. was not caught in actual possession of contraband in prison. He was an inmate at the Bureau of Prisons in Forest City, Arkansas. No contraband was found on this person. The government's case relied on the testimony of a co-defendant, Larry Jones. Mr. Jones testified he received the contraband from Mr. Dozier, Jr. Mr. Jones said he did not know what the contraband was when he received it. So the government's case at trial relied on opinion testimony by Bureau of Prison employees who interpreted prison video footage and the testimony of Mr. Larry Jones. We went to trial... Counsel, did the jury see the video? The videos, excuse me? The jury did see some video, Judge, that's correct. And I guess what bothered defense counsel was that you had this grainy video footage and then the prosecution called in at least three Bureau of Prison employees who basically gave a play-by-play of what they thought was occurring in the video footage. And we filed a motion in limine to prevent opinion testimony as the video that the jurors could watch. I think that my motion in limine was by docket number 31. Our motion in limine was denied. In turn, the appellant sought to produce a witness and did subpoena a witness who was a Bureau of Prisons employee, Mr. Tracy Holst. We proffered testimony of Tracy Holst that was going to center on the investigation of the allegations against Isaiah Dozier Jr. and Mr. Holst's decision, after reviewing the evidence, that the evidence did not support a finding that Mr. Isaiah Dozier Jr. possessed contraband in prison. So he was going to testify to the ultimate issue of guilt or innocence, right? No, I wouldn't agree. Well, I mean, you just said that he was going to testify that the defendant did not possess contraband. Isn't that an open and shut conviction if he did? One of the issues he would testify to was in the division hearing office. He made the determination there was not enough evidence, not sufficient evidence, to determine that Mr. Dozier possessed contraband. That was one of the issues that I believe. What were the other issues? Did they go beyond that? I believe that Mr. Holst had testimony regarding the fact that the investigation did occur. There was an administrative investigation that did occur, and he could testify as to the evidence that was revealed in the administrative hearing process. Specifically, I believe that Lloyd, who testified in other Bureau of Prisons employee testified trial, had gave some testimony that suggested there was no internal administrative hearing, and that was one point I made to judge that Mr. Holst would contradict, specifically contradict that suggestion, that there was not an administrative investigation. I think that the government, their main criticism of Holst's testimony was that, yes, he was going to offer some opinion testimony, not opinion testimony, fact testimony, as the result of an administrative investigation and hearing. Yes, he was going to offer that testimony. It was obviously favorable, as I think the government conceded in their brief, it's obviously favorable to Mr. Dozier. My position was that the court aired, and our position still is, there's no rule of evidence was espoused by the court that would bar the testimony of the defendant's only planned witness, and I believe we were entitled to offer a witness in the defense, and the government admits it would be favorable, and it was highly relevant, and the judge at the district court made no decision that this testimony was irrelevant. There was no finding that was irrelevant. The judge just barred the testimony in full, and I might add it was barred before trial, went through a motion in limine. Of course, I raised the objection again at trial, especially after Mr. Lloyd said there was no administrative or suggested there was no administrative hearing. So, obviously, I feel strongly about that. We think there was a major error there. What would the purpose of that testimony have been from the defense standpoint? What testimony do you refer to specifically? What you've been talking about, the Bureau of Prison official who you wanted to testify that his investigation resulted favorably to Mr. Dozier. Well, the government put on, thank you, Judge, the government put on testimony that said, you know, we found all this evidence, and we think this video shows this. I think Mr. Hulse could have provided testimony that he looked at the video and he didn't see sufficient evidence in his review of the film to make any finding that my client ever possessed contraband. I think the real problem here is that probably opinion testimony as to the contents of the video never should have been admitted to start with. When the government puts on multiple witnesses to give their interpretation of a video, which is unclear, these are not fact witnesses, they open the door for me to call a witness that says, I interpret the video differently. But that's not one of your arguments on appeal, however. I believe I... That the district court erred in allowing witnesses to, as you say, interpret the video for the jury. That's correct. I didn't see that as an argument on appeal. I thought your argument was that district court didn't allow your witness to interpret the video. Well, that is correct, Judge. That is one of my arguments. Either one of those, what difference does it make when it's up to the jury to interpret the video? Well, I think that my client provided more, or my client's proposed witness would have provided more than simply interpretation of the video. He could have talked about the administrative investigation and the determination that evidence was not sufficient to find that I... Counsel, what's the relevance of the administrative investigation? The jury makes the decision in a criminal case. Honestly, I don't see the relevance, and it's probably under 403, clearly inadmissible, or what someone else thought about the case. Well, Judge, why... I mean, the jury makes that call based on the evidence presented at trial. The fact that an administrative agency who's not sworn in at the time doesn't have cross-examination in all likelihood reaches a different, or maybe one person reaches a different conclusion, you know, that seems not relevant and prejudicial. Judge, I would submit that any fact that makes the ultimate issue more or less probable is relevant under 401, and the district court made no final... But that's just not the rule. I mean, you can't call whoever you want to say, do you think he's guilty or not? You call in ten witnesses as defendants, say, I don't think he's guilty. That's correct. You know, that's not relevant. Mr. Holtz was a fact witness. That's our position. He's a fact witness. He was involved in the investigation. And just like in the case of U.S. v. Turning Bear, where there's no determination that the testimony is irrelevant or immaterial, I think that a defendant has a right to call a witness. And I'll entertain any other questions that y'all have, or I'll reserve my remaining time. Okay. Okay, thank you, Mr. Ballard. Ms. Jagley? May it please the court, my name is Amanda Jagley, and I represent the United States. I would just like to briefly respond to the issue about Mr. Holtz's testimony. The district court did, in fact, make a ruling that it was both irrelevant and prejudicial. Number one, at docket entry 27, the government submitted a motion in limine seeking to exclude that testimony. The judge at docket entry 37 entered an order granting that motion in limine in full. And then when it was brought up again at trial, there was a whole colloquy that was cited in the brief in which the district court specifically said that what the administrative hearing officer decided should not impact what the jury should do, and it recognized that there was a different standard of proof. And so... Counsel, what was the opinion testimony offered by the government here as far as the interpretation of the meaning of the video? I would characterize it a different way. I think the court directed the government attorneys who tried this case to ask, I think he told them that they could ask what it appeared to them in the video. And so I'm not sure that I would characterize that as opinion testimony.  In other words, what do you think happened? Or what appears to you is the same thing in my mind as, what do you think this video shows? And why isn't, when that door is open, why isn't the defendant entitled to introduce evidence of what someone else thinks the video shows? So the way I understood the record was that it was when the officer viewed the video, that provided the basis for the further investigation. So I did not interpret that as opinion testimony. And I mean... Was it only an explanation of why further investigation was conducted? Was the testimony limited to that issue? I believe it was Officer Wright who went and obtained the shoes that were introduced in this case. Because he watched the video and saw on the video, Mr. Dozier reached down into his shoes, he decided to go and retrieve those shoes from the property room, which is where they were stored. So... But I think the main issue concerning the instruction and sufficiency challenges, before the court today, is whether Mr. Dozier had to know specifically what prohibited object he possessed. And in researching this, there's no case law directly on this point in the context of a 1791 prosecution. But that issue was addressed by the Third Circuit in the U.S. v. Holmes case, where it rejected a similar argument. In that case, Holmes argued that he could only violate 1791 if he knowingly possessed an object he knew was a weapon. And so the framework utilized by the Third Circuit was that they examined the text and structure of 18 U.S.C. 1791, and they also scrutinized that statute in light of the special context of the safety and security needs of a federal prison. The text of 1791A2 states that whoever being an inmate of a prison makes, possesses, obtains, or attempts to make or obtain a prohibited object shall be punished as provided in subsection B. What's noteworthy about that is subsection A2 does not mention the specific category of prohibited object, nor does it describe the prohibited object. So subsection A2 describes the unlawful act, which is to possess a prohibited object. And the Holmes court found that the unlawful act is to possess a prohibited object generally, not a specified prohibited object. Subsection B contains the punishment provisions associated with the specific prohibited objects, which are then defined in subsection D. And so the significance of that is it is the penalty and not the unlawful act that is dependent upon the precise type of prohibited object involved. And therefore the knowledge required for the act to be unlawful does not apply to the specific type of prohibited object described in subsection B, which is the penalty section. So Holmes also recognized that prisons have particular needs and that statutes designed to regulate contraband in prisons must be scrutinized in light of those special needs. And I would turn to a case cited by the appellant, which was United States v. Burbeier, which in that case they held the instructions there erroneously omitted a mens rea element, but the Eighth Circuit recognized that under Flore Figaroa, I believe I'm pronouncing that right from the Supreme Court, that where the term knowingly does not apply to all elements that follow, it typically involves special context or background circumstances that call for such a reading. And so I would submit here in a federal prison, there are numerous safety and security needs which make this a special context to not apply the knowingly element to the penalty section of the statute. And Holmes notes that 1791 applies only to federal prisons. And again, there was testimony introduced in this case that kind of illustrate why. I believe it was Agent Flint testified that cell phones make it possible for inmates to call hits, run drugs, or even orchestrate escapes. And of course, the narcotics trade in prison creates a dangerous situation because it involves exchanges for money or contraband or commissary. And so, and obviously having intoxicated inmates in prison also presents a danger to staff. I would submit this proposed reading of 1791 is also supported by the circuit's interpretation under the Controlled Substances Act. I think that's perhaps best illustrated by the United States v. Martin case cited in my brief. In that case, a supplemental instruction to the jury was given, and this court held that the district court properly instructed the jury that a defendant did not need to know the exact nature of the substance in his possession, only that it was a controlled substance of some kind. And I think the Noibi case also cited states that the knowingly element of that offense refers to a general criminal intent, i.e. an awareness that the substance possessed was a controlled substance of some kind. And I think this general intent should apply in the context of 18 U.S.C. 1791 because there's some similarities between 1791 and 841. For instance, in 841, the penalty is based on the type and quantity of controlled substance involved in the unlawful act. And like 841, 1791 also bases the penalty solely on the type of prohibited object involved. And so because this circuit has interpreted those cases under the Controlled Substances Act in that manner, it really should not be different in the context of contraband in prisons. Because to hold otherwise, it just wouldn't make sense to have a stricter mens rea requirement under 1791 than exists under 841. And that's really, I think, the ultimate question that has to be decided in this case with regard to the sufficiency and instructional challenge. And as for the evidentiary challenges, unless this court has any further questions, I surrender my time. All right. Thank you, Ms. Brackett. Mr. Bauer, we'll round you up to a minute for your rebuttal. You may proceed. Thank you, Judge. I'll speak briefly on the issue of whether or not the jury instructions read or correct. And I'll discuss the Holmes case cited by the government. In the Holmes case, the issue was not whether the government must prove that the defendant possessed the object with which he was charged. Instead, in the Holmes case, the defendant said that he wasn't in knowing possession of a weapon. What the District Court in Holmes in the Third Circuit instructed the jury was that, specifically, the jury must find the defendant knowingly possessed a blade. The position in the USP Holmes case is that the government must prove knowing possession of the object that the defendant is charged with possessing. That is exactly the appellant's position in this case. And that is exactly why this court should reverse the District Court's jury instruction. There is a model instruction in the Eighth Circuit that properly states the law. The District Court failed to give it. Holmes supports the appellant's argument. Thank you for your time. Thank you, counsel. We appreciate your arguments. The case is submitted. The court will render a decision in due course.